UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ANIL KUMAR SUBRAMANYAM, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>KLM ROYAL DUTCH AIRLINES,<br><br>    Defendant. | Case No. 20-11296<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER GRANTING MOTION TO DISMISS [9] AND DISMISSING AS MOOT MOTION TO STRIKE [17]**

Anil Kumar Subramanyam and his family planned to travel from Detroit, Michigan to Bangalore, India in May 2020. So in January 2020, Subramanyam purchased three plane tickets from KLM Royal Dutch Airlines. But a few months later, the world was turned upside-down by the COVID-19 pandemic, and in April 2020, KLM cancelled Subramanyam's flights. KLM originally offered Subramanyam only a travel voucher for his non-refundable tickets, despite his request for a cash refund. Subramanyam filed this lawsuit on May 22, 2020 on behalf of himself and a proposed class, alleging that KLM was liable for breach of contract by refusing to issue cash refunds for cancelled flights. On July 6, 2020, KLM issued Subramanyam a full cash refund. Subramanyam then filed an amended complaint alleging that KLM was still liable for breach of contract for failing to provide refunds promptly. KLM now moves to dismiss the complaint for lack of subject-matter jurisdiction, lack of personal jurisdiction, and failure to state a claim. Because Subramanyam fails to state a claim for relief, KLM's motion is GRANTED, and the complaint is DISMISSED.

## I.

In early January 2020, Subramanyam purchased roundtrip plane tickets for himself, his wife, and his daughter from KLM. (ECF No. 8, PageID.115; ECF No. 9-2, PageID.201.) Subramanyam and his family planned to fly from Detroit, Michigan to Bangalore, India via Paris, France on May 26, 2020, and to return to Detroit on July 8, 2020. (*Id.*) Subramanyam paid $2,634.47 for the tickets. (ECF No. 8, PageID.115; ECF No. 9-2, PageID.203.) The tickets were classified as non-refundable. (ECF No. 9-2, PageID.202; ECF No. 9-5, PageID.232.) Although the tickets were sold by KLM, the flights were to be operated by KLM's codeshare partners, Delta Air Lines and Air France. (ECF No. 9-2, PageID.201.)

After the outbreak of the COVID-19 pandemic and the imposition of travel restrictions globally, on April 20, 2020, KLM cancelled Subramanyam's booking. (ECF No. 9-2, PageID.202.) Subramanyam contacted KLM and requested a cash refund but was offered a travel voucher instead. (ECF No. 8, PageID.115.) KLM issued Subramanyam three vouchers valued at $2,634.37 in total on April 23, 2020. (ECF No. 9-2, PageID.203.) Believing he was entitled to a cash refund, Subramanyam filed this lawsuit on May 22, 2020 on behalf of himself and similarly situated plaintiffs. (ECF No. 8, PageID.115; ECF No. 1.)

According to KLM, in response to guidance from the Department of Transportation (DOT), KLM amended its refund policy on April 7, 2020 to allow customers whose flights were cancelled to choose between a travel voucher and a cash refund. (*Id.*) But because of the large volume of refund requests, some customers, including Subramanyam, experienced delays in receiving refunds or vouchers. (*Id.*)

On July 6, 2020, KLM issued Subramanyam a full cash refund. (ECF No. 9-2, PageID.204.) After KLM filed a motion to dismiss on September 1, 2020, Subramanyam filed an

amended complaint. (ECF No. 8.) The amended complaint, which includes counts for breach of contract and rescission, alleges that KLM is liable for failing to provide prompt refunds in violation of its General Conditions of Carriage and DOT regulations. (*Id.* at PageID.110, 120–122.)

## II.

KLM now moves to dismiss Subramanyam's amended complaint for lack of subject-matter jurisdiction, lack of personal jurisdiction, and failure to state a claim. (ECF No. 9.) The motion is fully briefed and can be decided without the need for further argument. *See* E.D. Mich. LR 7.1(f).

The Court begins with KLM's challenge to personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Subramanyam bears the burden of demonstrating personal jurisdiction. *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 548 (6th Cir. 2016). But "[w]hen the district court resolves a Rule 12(b)(2) motion solely on written submissions, the plaintiff's burden is 'relatively slight,' and 'the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal[.]'" *Id.* at 548–49 (quoting *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007)). And the facts must be viewed in the light most favorable to Subramanyam. *Id.* at 549.

In a diversity case such as this, Subramanyam must demonstrate that both due process and Michigan's long-arm statute are satisfied in order to exercise personal jurisdiction over KLM. *Schneider v. Hardesty*, 669 F.3d 693, 699 (6th Cir. 2012); Mich. Comp. Laws § 600.701 *et seq*. Subramanyam asserts that limited personal exists pursuant to § 600.715, which allows a court to exercise jurisdiction over a corporation for claims "arising out of" "[t]he transaction of any business within the state," "[t]he doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort," or "[e]ntering into a contract for services to be performed or for materials to be furnished in the state by the defendant."

3

Subramanyam's first argument, that KLM transacted business within Michigan, is most applicable here. "The 'transaction of any business' necessary for limited personal jurisdiction under § 600.715(1) is established by 'the slightest act of business in Michigan.'" *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002) (quoting *Lanier v. Am. Bd. of Endodontics,* 843 F.2d 901, 906 (6th Cir. 1988)). As Subramanyam points out, KLM sells tickets for flights originating in Michigan and enters into contracts with travelers who live in Michigan. (ECF No. 11, PageID.264.) This constitutes transaction of business in Michigan sufficient to satisfy the long-arm statute. And Subramanyam's claims arise out of one of these business transactions, namely KLM selling (and then cancelling) plane tickets for flights originating in Michigan.

But Subramanyam must also show that the exercise of jurisdiction comports with due process. The Michigan long-arm statutes are coextensive with due process. *Green v. Wilson*, 565 N.W.2d 813, 816 (Mich. 1997). So once it is determined that the defendant's activities fit within one of the categories of the long-arm statutes, the Court need only analyze whether personal jurisdiction is permitted under the Due Process Clause of the U.S. Constitution. *Id.* The Due Process Clause requires that, in order to subject a defendant corporation to personal jurisdiction, it must have "certain minimum contacts [with the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *AlixPartners*, 836 F.3d at 549 (quoting *Walden v. Fiore*, 571 U.S. 277, 283 (2014)).

The Sixth Circuit has articulated a three-part test to analyze the due process requirement: (1) the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state, (2) the cause of action must arise from the defendant's activities there, and (3) the acts of the defendant or consequences caused by the defendant must

have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Air. Prods.*, 503 F.3d at 550 (internal citations omitted).

Purposeful availment is considered the "constitutional touchstone" of personal jurisdiction. This requirement is met where "the defendant's contacts with the forum state 'proximately result from actions by the defendant *himself* that create a substantial connection with the forum State.'" *Neogen*, 282 F.3d at 889 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985)) (emphasis in original). This requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Schneider v. Hardesty*, 669 F.3d 693, 701 (6th Cir. 2012) (internal citations omitted).

Subramanyam points to the following contacts that KLM created with Michigan: (1) KLM entered into a contract with Subramanyam in Michigan, (2) KLM sold tickets for flights originating in Michigan (including the flights sold to Subramanyam), and (3) KLM entered into codeshares with other airlines to operate flights into and out of Michigan. (ECF No. 11, PageID.266.) KLM argues that because Subramanyam does not allege that KLM specifically directs its services towards Michigan consumers or that KLM reached out to him, he cannot establish purposeful availment. (ECF No. 9, PageID.192.) The single citation KLM provides in support of its argument is not analogous to this case. *See SRS Techs., LLC v. Nat'l Minority Trucking Ass'n, Inc.*, No. 17-13207, 2018 WL 925847, at *3 (E.D. Mich. Feb. 16, 2018) (holding no purposeful availment where the defendant company was a Georgia-based customer of Michigan-based plaintiff and did not reach out or otherwise solicit business from plaintiff).

Instead, the undisputed facts establish that KLM "purposefully 'reach[ed] out beyond' their State and into another by . . . entering a contractual relationship that 'envisioned continuing and

wide-reaching contacts' in the forum State." *Walden*, 571 U.S. at 285 (quoting *Burger King*, 471 U.S. at 479–80). KLM's operation of flights in Michigan in connection with its codeshare partners, and its direct sales of those flights to consumers in Michigan, clearly created a connection with Michigan that was "intended to be ongoing in nature, as opposed to a one-shot affair." *AlixPartners*, 836 F.3d at 551 (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263–65 (6th Cir. 1996); *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 385 (6th Cir. 1968)) (internal quotation marks omitted); *see also Dedvukaj v. Maloney*, 447 F. Supp. 2d 813, 820 (E.D. Mich. 2006) ("It should, in the context of these commercial relationships, be no great surprise to sellers—and certainly no unfair burden to them—if, when a commercial transaction formed over and through the internet does not meet a buyer's expectations, they might be called upon to respond in a legal forum in the buyer's home state.").

The second part of the due-process test requires the Court to determine whether Subramanyam's claims arise from KLM's activities in Michigan. Here, KLM insists that because Subramanyam's claims arise out of KLM's cancellation rather than operation of a flight, the Court should only consider KLM's actions related to cancellation and refund policies, all of which took place in the Netherlands. (ECF No. 9, PageID.192–193.) But KLM construes its relevant activities too narrowly. The "arising from" standard is a lenient one and "the cause of action need not formally arise from defendant's contacts." *Air Prods.*, 503 F.3d at 553 (internal citation omitted). Clearly here, Subramanyam's claim for breach of contract is inextricably connected to KLM's sale of flights originating in Michigan and its specific contract with Subramanyam for a flight leaving from Detroit. So Subramanyam satisfies the arising-out-of requirement.

Finally, Subramanyam must show that exercising personal jurisdiction over KLM would be reasonable. When "the first two criteria are met . . . only the unusual case will not meet this

third criterion." *Theunissen v. Matthews*, 935 F.2d 1454, 1461 (6th Cir. 1991) (citations and quotation marks omitted). But the Court will consider a number of factors including "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the policy." *Air Prods.*, 503 F.3d at 554–55 (citation omitted). KLM argues that its contacts with Michigan are too attenuated for the exercise of personal jurisdiction. (ECF No. 9, PageID.193.) And in a footnote, KLM also argues the Court should decline to exercise personal jurisdiction because requiring KLM to litigate in Michigan would be a substantial burden on the company. (*Id.*) This argument does not persuade. KLM is a large global company that purposefully transacts business with customers in Michigan (and presumably in all 50 states). It cannot reasonably believe or expect that its United States' customers harmed by a flight cancellation can only obtain relief by suing KLM in the Netherlands. Any burden that may be imposed on KLM by calling witnesses outside of Michigan and the United States if the case goes to trial is slight. Moreover, Michigan has an interest in protecting its citizens who are harmed when out-of-state defendants breach their contracts with Michigan residents.

So for all the reasons articulated, Subramanyam has established a prima facie case that KLM is subject to limited personal jurisdiction in Michigan for purposes of this case.

### III.

The Court next turns to KLM's other jurisdictional challenge: subject-matter jurisdiction. KLM argues that the Court does not have subject-matter jurisdiction in this case because Subramanyam does not have standing or his claims are moot.

"Article III of the [U.S.] Constitution empowers the federal courts to hear only 'cases or controversies.'" *Fialka–Feldman v. Oakland Univ. Bd. of Trustees*, 639 F.3d 711, 713 (6th Cir.

7

2011) (citing U.S. Const. art. III, § 2, cl. 1). An essential part of the case-or-controversy requirement is that all plaintiffs are required to have standing. The three elements of standing are that (1) the plaintiff suffered an injury in fact that is (a) concrete and particularized, or (b) actual or imminent, (2) there is a causal connection between the injury and the conduct complained of, and (3) it is likely that the injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (internal citations omitted).

KLM argues that Subramanyam cannot allege a redressable injury because at the time he filed this suit he had already received travel vouchers for the value of his tickets and he was not entitled to anything more under his contract with KLM. (ECF No. 9, PageID.187.) But Subramanyam argues that he was entitled to a full cash refund under the contract, which he did not receive before commencement of the suit. (ECF No. 11, PageID.260.) KLM's argument requires an analysis of the underlying merits of the breach of contract claim. For the purposes of evaluating standing, Subramanyam has properly alleged that he was injured by not receiving a prompt cash refund, that KLM's breach of his contract caused that injury, and that a ruling in his favor would fully redress his injury. So Subramanyam has standing to bring this suit.

The question of mootness is more complicated and is intertwined with the underlying merits of the case. "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Ford v. Wilder*, 469 F.3d 500, 504 (6th Cir. 2006) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). KLM argues that Subramanyam's case has been rendered moot because the company issued him a full cash refund in July 2020 and has been continually processing refunds for all similarly situated passengers. (ECF No. 9, PageID.188.) Subramanyam argues that his claims are not moot because two

exceptions apply: the "inherently transitory" and "pick off" exceptions. (ECF No. 11, PageID.260–261.)

But the Court finds it is not necessary to analyze these exceptions because Subramanyam still has a live claim. Subramanyam alleges that KLM breached its contract by failing to issue a cash refund *within a reasonable time.* (ECF No. 11, PageID.255.) So if Subramanyam was entitled to a refund under the contract, the question remains whether KLM issued that refund within a reasonable time. *See, e.g.*, *Maree v. Deutsche Lufthansa AG*, No. SACV20885, 2021 WL 267853, at *1 (C.D. Cal. Jan. 26, 2021) (holding that passenger had standing to bring claim for damages for delayed airline refund because loss of the use of one's money constitutes a concrete and redressable injury).

So the Court cannot determine whether the case is moot without answering the essential question whether Subramanyam was entitled to a cash refund within a reasonable time pursuant to his contract with KLM.

### IV.

KLM argues that Subramanyam fails to state a claim for breach of contract or rescission. When deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded factual allegations in the complaint as true, and draw[s] all reasonable inferences in favor of the plaintiff." *Ostergren v. Frick*, No. 20-1285, 2021 WL 1307433, at *3 (6th Cir. Apr. 8, 2021) (quoting *Cahoo v. SAS Analytics, Inc.*, 912 F.3d 887, 897 (6th Cir. 2019)) (internal quotation marks omitted).

The contract in question in this case is KLM's contract of carriage with Subramanyam which consists of KLM's General Conditions of Carriage, the Fare Conditions attached to his

tickets, and any notices issued by KLM to him. (ECF No. 8-1, Page ID.130.) The Court may consider the text of the Conditions of Carriage on this motion to dismiss because it is attached as an exhibit, "referred to in the complaint and [is] central to the claims contained therein." *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)).

## A.

KLM first argues Subramanyam fails to state a claim because his claims are entirely preempted by the Airline Deregulation Act (ADA).

The ADA prohibits states from "enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). The ADA has a "broad pre-emptive purpose" and the Supreme Court has held that state-law claims which have "a connection with or reference to airline 'rates, routes, or services' are preempted." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992). Despite this broad preemption, the law is clear that "the ADA permits state-law-based court adjudication of routine breach-of-contract claims." *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 232–33 (1995). And a number of courts have held that implicit in the *Wolens* ruling "is that courts would remain free to use general principles of contract law to interpret parties' agreements without running afoul of the ADA." *Maree*, 2020 WL 6018806, at *5 (citing *Hickcox-Huffman v. US Airways, Inc.*, 855 F.3d 1057, 1065 n.39 (9th Cir. 2017) (relying upon and citing to Restatement (Second) of Contracts (Am. Law Inst. 1981)); *Cox v. Spirit Airlines, Inc.*, 786 F. App'x 283, 285 (2d Cir. 2019) ("Under *Wolens*, routine contract claims may proceed, which necessarily requires employing tools of contractual interpretation."). Based on this principle, other courts considering similar disputes have ruled that "where a contract calls for singular performance and 'no time is

specified, a term calling for performance within a reasonable time is supplied.'" *Maree*, WL 6018806, at *5 (quoting Restatement (Second) of Contracts § 204 (1981)); *see also Castanares v. Deutsche Lufthansa AG*, 2020 WL 6018807, at *5 (C.D. Cal. Oct. 9, 2020); *Jackson v. Estate of Green*, 771 N.W.2d 675, 694 (Mich. 2009) (internal citation omitted) ("[W]hen a contract is silent as to time of performance or payment, absent any expression of a contrary intent, the law will presume a reasonable time.").

But it is true that, even in the breach-of-contract context, the ADA confines the parties to their contractual bargain "with no enlargement or enhancement based on state laws or policies external to the agreement." *Wolens*, 513 U.S. at 233. As an initial matter, this means that Subramanyam is limited to actual damages. (ECF No. 8-1, PageID.152 (Art. 19.1.2(b): "The Carrier's liability may not exceed the amount of proven direct Damage and the Carrier shall not be liable, in any way, for consequential Damage or any form of non-compensatory Damage.").) But as discussed above, Subramanyam alleges he is owed actual damages for "depriv[ation] of the time-value of his money and the loss of interest." (ECF No. 11, PageID.255.)

So even though the carrier contract may not be enlarged, if Subramanyam was entitled to a refund, general principles of contract interpretation allow him to claim breach of contract if the refund was not issued within a reasonable time.

B.

The essential question is whether the contract actually entitled Subramanyam to a cash refund and thus whether KLM breached the contract by failing to provide a refund promptly. To establish breach of contract under Michigan law, Subramanyam must show that "(1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co. v. Ahrens Const., Inc.*, 848 N.W.2d 95, 104 (Mich. 2014). KLM argues

that the Conditions of Carriage do not include the right to a refund for non-refundable tickets. (ECF No. 9, PageID.181.) Subramanyam argues the opposite: that the contract provides for a refund for any flight that KLM cancels, and that even if the contract purports to exclude refunds for non-refundable fares, such an exclusion would be invalid under the terms of the contract. (ECF No. 11, PageID.248.)

The Court agrees with KLM that the Conditions of Carriage unambiguously say that passengers who purchase a non-refundable ticket are not entitled to a refund, even when KLM initiates the cancellation. First take the contract's general provisions about tickets, which states: "Certain Tickets, which are sold at specific Fares, are partially or totally non–changeable and/or refundable. It is the Passengers' responsibility, when making their Reservation, to consult the conditions applicable to the use of the Fare and, where necessary, to take out appropriate insurance to cover the risks associated therewith." (ECF No. 8-1, PageID.135–136.) This language makes clear that certain tickets are *totally* non-refundable, and explicitly warns passengers to consider taking out insurance to cover the risk these tickets create. And the fare conditions attached to Subramanyam's tickets state that each "ticket is non-refundable in the case of cancel/no-show. Waived for death of passenger or family member." (ECF No. 9-5, PageID.232.) These two provisions read together establish that Subramanyam's tickets were non-refundable in any circumstances other than the death of the passenger or a family member.

Subramanyam relies instead on Article 14 of the Conditions of Carriage. Subramanyam argues that the language in Article 14.1—"If you cancel your flight(s) and have a non-refundable ticket, you can request a refund of unused airport tax" (ECF No. 8-1, PageID.148)—establishes that a "non-refundable ticket" is only non-refundable when the passenger, rather than the airline, initiates the cancellation. (ECF No. 11, PageID.251.) But the plain text of this language makes

12

clear that the provision simply means that when a passenger cancels a flight for a non-refundable ticket, he can request a refund of the unused airport tax, but not for any other portion of the fare.

The context provided by surrounding language bolsters this conclusion. In relevant part, Article 14.1 also states, "The refund of a Ticket, in whole or in part, will take place in accordance with the conditions defined in this Article 14, in accordance with the Ticket's fare conditions and all circumstances with the relevant applicable regulations." (ECF No. 8-1, PageID.148.) And Article 14.2 states: "A refund, where it is authorized by the Ticket's fare conditions, will be paid on the basis of Fare Including Tax paid for the Ticket." (*Id.*) This language again makes clear that refunds are only authorized for certain types of fares, and refunds are determined based on a ticket's fare conditions.

Thus, the Court concludes that under the contract language, Subramanyam was not entitled to a refund.

But that is not the end for Subramanyam. He argues that a contract provision that denies a refund when KLM cancels a flight violates Department of Transportation regulations and notices.

Subramanyam argues that KLM is bound by DOT's position that a passenger is entitled to a refund when the airline cancels his flight. Subramanyam points to language on the DOT's website regarding refunds: "Passengers who purchase non-refundable tickets are not entitled to a refund unless the airline makes a promise to provide a refund or *the airline cancels a flight* or makes a significant schedule change." *Refunds*, U.S. Department of Transportation, https://perma.cc/4NDP-FEJ8 (emphasis added). The Court is not convinced that KLM can be bound by language on DOT's website. But Subramanyam also cites a DOT regulation from 2011, which states:

> Since at least the time of an Industry Letter of July 15, 1996 (see http://airconsumer.dot.gov/rules/guidance) the Department's Aviation

13

> Enforcement Office has advised carriers that refusing to refund a non-refundable fare when a flight is canceled and the passenger wishes to cancel is a violation of 49 U.S.C. 41712 (unfair or deceptive practices) and would subject a carrier to enforcement action.

Enhancing Airline Passenger Protections, 76 Fed. Reg. 23110, 23129 (Apr. 25, 2011).

As the Court previously noted, the ADA prohibits the enlargement of the terms of the parties' agreement. But Subramanyam argues that the DOT's statements are incorporated into the Conditions of Carriage through Article 2.4, which states: "These General Conditions of Carriage are applicable to the extent that they are not contrary to mandatorily applicable Conventions, Regulation, laws and regulatory requirements or the rules governing public order, in which case, said laws or rules shall prevail." (ECF No. 8-1, PageID.135.) The contract's exclusion of refunds for non-refundable tickets even when the flights are cancelled by KLM does appear to be contrary to the DOT rule and so the DOT rule would prevail.

But to conclude that the DOT rule prevails does not mean that Subramanyam can enforce that rule through a breach of contract suit. The 2011 DOT Regulation does not create a private right of action. The text of the regulation itself notes that failure to issue refunds "is a violation of 49 U.S.C. 41712 . . . and would subject a carrier to *enforcement action*." 76 Fed. Reg. at 23129 (emphasis added); *see also Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 302 (1976) (holding in regards to the predecessor statute of § 41712, "individual consumers are not [] entitled to initiate proceedings under § 411 [of the Federal Aviation Act of 1958]."). In a similar case, a court concluded that the following language in United Airlines' carrier contract was too general to incorporate the 2011 DOT regulation: "in the event of a conflict [between the conditions of carriage's provisions and] laws, regulations, rules, and security directives imposed by governmental agencies, the latter shall prevail." *Rudolph v. United Airlines Holdings, Inc.*, No. 20-2142, 2021 WL 534669, at *9 (N.D. Ill. Feb. 12, 2021). And the First Circuit has held that it was

an untenable position to argue that a DOT regulation was capable of "spawning an implied right of action [that] may be enforced between private parties as an implicit contract term." *Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 36–37 (1st Cir. 2007). The *Buck* court also noted that "construing all federal regulations touching upon air travel as automatically incorporated into every airline's contracts of carriage would allow litigants freely to skirt the implied right of action doctrine." *Id.* at 37.

Subramanyam does not provide any legal support for his contrary position. In fact, several of the cases he himself cites also hold that DOT regulations cannot be incorporated into carrier contracts through boilerplate provisions. *See Maree*, 2020 WL 6018806, at *4 ("The Court agrees with Lufthansa that the DOT regulations relied upon by Plaintiff are not incorporated into Lufthansa's Conditions of Carriage."); *Daversa-Evdyriadis v. Norwegian Air Shuttle ASA*, 20-767-JGB, 2020 WL 5625740, at *4 (C.D. Cal. Sept. 17, 2020) (collecting cases and stating its agreement "with the vast majority of its sister courts . . . that boilerplate contractual language guaranteeing compliance with international or domestic aviation laws does not incorporate extraneous law into the terms of an airfare contract").

This Court too agrees with its sister courts that the general language of KLM's Conditions of Carriage does not incorporate the 2011 DOT regulation. "The intent to incorporate another document into a contract must be clear and specific." *Rudolph*, 2021 WL 534669, at *9 (quoting *Volodarskiy v. Delta Air Lines, Inc.*, No. 11-00782, 2012 WL 5342709, at *3 (N.D. Ill. Oct. 29, 2012). *Cf. Giannopoulos v. Iberia Lineas Aereas de Espana, S.A.*, No. 11-775, 2011 WL 3166159, at *3 (N.D. Ill. July 27, 2011) ("Unlike generic references to 'applicable law' or arguments that certain federal regulations are implicitly part of every contract, in this case, Iberia specifically refers to complying with EU 261 in its conditions of contract."). Article 2.4 of the Conditions of

Carriage does not reference the 2011 DOT regulation (or any other specific law or rule) such that it could become a contract term that Subramanyam can enforce through a civil suit. Although KLM's contract may be in conflict with DOT regulations, that is a matter for DOT to address through an enforcement action if it so wishes.

Since the Conditions of Carriage did not entitle Subramanyam to a cash refund by their own terms, and there can be no incorporation of DOT's rules or regulations to create a private right of action, KLM did not breach its contract by providing Subramanyam with a full cash refund three months after it cancelled his flight.

## C.

There is a final matter the Court must address. Subramanyam's amended complaint also includes a count for rescission. But "rescission is a remedy, not a cause of action." *Maree*, 2020 WL 6018806, at *6. In Michigan, "[r]escission is an equitable remedy that is used to avoid a contract." *Majestic Golf, L.L.C. v. Lake Walden Country Club, Inc.*, 823 N.W.2d 610, 621 (Mich. Ct. App. 2012). As such, "rescission is not an independent cause of action." *Monroe Bank & Tr. v. Jessco Homes of Ohio, LLC*, 652 F. Supp. 2d 834, 840 (E.D. Mich. 2009); *see also Lenawee Co Bd. of Health v. Messerly*, 331 N.W.2d 203 (Mich. 1982) (stating that rescission is "an equitable remedy which *410 is granted only in the sound discretion of the court"); *Poole v. Midvest LLC*, No. 269129, 2006 WL 2687528, at *2 n.4 (Mich. Ct. App. Sept. 19, 2006) (citations omitted) ("[R]escission is an equitable remedy which may be appropriately granted in cases involving fraud rather than a specific cause of action.").

Even if Subramanyam could bring a claim for rescission, it would likely be preempted by the ADA. *See, e.g.*, *Daversa*, 2020 WL 5625740, at *6 (rescission would be preempted by the ADA); *Martin v. United Airlines, Inc.*, No. CV-16-1042, 2017 WL 3687347, at *5 (W.D. Okla.

16

Apr. 18, 2017), *aff'd*, 727 F. App'x 459 (10th Cir. 2018) (noting that a claim based upon state-imposed equitable principles is preempted by the ADA).

V.

Subramanyam has already had an opportunity to amend the complaint. In his response, he did not seek to amend again. Thus, for the reasons stated above, KLM's motion to dismiss (ECF No. 9) is GRANTED and Subramanyam's amended complaint is DISMISSED WITH PREJUDICE for failure to state a claim.

Subramanyam's pending motion to strike (ECF No. 17) is DISMISSED as moot.

SO ORDERED.

Dated: April 23, 2021

                                                s/Laurie J. Michelson
                                                LAURIE J. MICHELSON
                                                UNITED STATES DISTRICT JUDGE